UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JAMAL WHITEHEAD,

      Petitioner,

v.                                  Case No.  8:09-cv-2396-T-17TGW


SECRETARY, DEPARTMENT OF CORRECTIONS,

      Respondent.

_____


## **ORDER**

    This cause is before the Court on Petitioner Whitehead's timely-filed amended 28 U.S.C. § 2254 petition for writ of habeas corpus. (Doc. 6).  A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

FACTUAL BACKGROUND

    The facts of this case are found in the Answer Brief filed in Whitehead's direct appeal (Exhibit 003), which are summarized as follows:

    Appellant (Whitehead) was charged by amended information with trafficking in cocaine (400 grams or more but less than 150 kilograms), a first-degree felony, for an incident which occurred October 4, 2001. Whitehead was tried separately from his co-defendant, Frank Cuevas, on July 1, 2004. (Exhibit 001, R. 5-7; T1).

    Detective Sweeting, a narcotics detective with the Sarasota Police Department, posed undercover as a seller of cocaine on October 4, 2001. (Exhibit 001, T. 21-23). A

person named Jamal was to come to Sarasota and meet Detective Sweeting for the purpose of purchasing a quantity of cocaine. (Exhibit 001, T. 23-24). Jamal met Detective Sweeting at the appointed location, and Detective Sweeting's informant verified that Jamal had the funds for the purchase. Detective Sweeting identified the purchaser as Jamal. (Exhibit 001, T. 23-26).

Whitehead told Detective Sweeting he had $10,000 for the transaction; he also had an automobile valued at about $8,000 and some jewelry to be used as collateral for the purchase. (Exhibit 001, T. 26-27). Detective Sweeting and Whitehead discussed the terms of the transaction, including the plan for Detective Sweeting to "front" a portion of the cocaine to Whitehead for a period of 24 hours. (Exhibit 001, T. 28). Whitehead had put the money and the jewelry on the hood of the car, and at that point, the purchase was finalized. (Exhibit 001, T. 26-28). Detective Sweeting testified as follows:

> I then get the cocaine. I give one kilo to Jamal. I give one to the second individual. Jamal takes a knife and cuts into the one kilo and snorts it to check for its quality, to make sure it's real cocaine. After I ask him if he likes it he advises me that he does, at that point, I remove myself from being next to Jamal and he is then arrested.

 (Exhibit 001, T. 29).

Whitehead made a statement following his arrest in which he revealed that he called the informant at the behest of his stepfather regarding purchasing the cocaine and delivering it to someone in North Carolina. Whitehead said that his role was to purchase the cocaine and turn it over to the other individuals. (Exhibit 001, T. 52-53).

The cocaine from the transaction was admitted into evidence. The substance tested positive for cocaine, and consisted of two "bricks" weighing 1,009.9 grams and 1,017.4 grams respectively. (Exhibit 001, T. 16, 60-61, 63).

At the close of the State's case, the defense moved for a judgment of acquittal on the grounds that: (1) the State failed to establish chain of custody for the cocaine; and (2) the State failed to establish the element of knowledge. The trial court denied Whitehead's motion. (Exhibit 001, T. 70-71).

On July 1, 2004, the jury found Whitehead guilty of trafficking in cocaine over 400 grams, as charged, and the trial court sentenced Whitehead to the mandatory minimum sentence of 15 years incarceration. (Exhibit 001, R. 79, 97-103; T. 143-44). Whitehead filed a timely notice of appeal on July 15, 2004. (Exhibit 001, R. 89).

## Direct Appeal

Whitehead raised one issue on direct appeal:

### Issue I

WHETHER THE TRIAL COURT COMMITTED FUNDAMENTAL ERROR IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL BASED ON AN ARGUMENT THAT THE STATE FAILED TO ESTABLISH APPELLANT HAD DOMINION AND CONTROL OF THE COCAINE?

On July 15, 2005, the Second District Court of Appeal per curiam affirmed Whitehead's convictions and sentence in case no. 2D04-3286. *Whitehead v. State*, 907 So. 2d 535 (Fla. 2d DCA 2005)[Table]. (Exhibit 004) The mandate issued August 15, 2005. (Exhibit 005).

## Ineffective Assistance of Appellate Counsel

On November 11, 2005, Whitehead filed a Petition in the Second District Court of Appeal alleging Ineffective Assistance of Appellate Counsel in case no. 2D05-5271. (Exhibit 006). Whitehead raised three issues in his petition:

Issue I

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE
ISSUE OF OBJECTIVE AND SUBJECTIVE ENTRAPMENT.

Issue II

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE
PROSECUTORIAL MISCONDUCT AS AN ISSUE ON APPEAL.

Issue III

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE A
CHAIN OF CUSTODY ARGUMENT AS TO THE INTRODUCTION OF THE
COCAINE INTO EVIDENCE.

The Second District Court of Appeal per curiam affirmed Whitehead's conviction and

sentence on February 7, 2006. *Whitehead v. State*, 922 So. 2d. 211 (Fla. 2nd DCA 2006).

(Exhibit 010). The Mandate issued March 2, 2006.

**Rule 3.850 Motion for Post-Conviction Relief**

Whitehead filed for post-conviction relief in the trial court on February 2, 2007.

(Exhibit 011, R. 22-79). Whitehead raised nine grounds for relief:

Ground One

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO PROCEDURALLY
AND SUBSTANTIVELY ADDRESS THE ISSUE OF ENTRAPMENT WHERE
OBJECTIVE AND SUBJECTIVE ENTRAPMENT WERE INDISPUTABLY
PRESENT.

Ground Two

TRIAL COUNSEL'S PERFORMANCE FELL BELOW THE STANDARD OF
A COMPETENT ATTORNEY IN FAILING TO IMPEACH A STATE WITNESS
IN FURTHERANCE OF THE DEFENDANT'S ENTRAPMENT DEFENSE.

Ground Three

DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL
WHEN COUNSEL FAILED TO OBJECT TO A PLETHORA OF

PROSECUTOR'S COMMENTS AND PREJUDICIAL CONDUCT WHICH PERVADED THE TRIAL.

### Ground Four

DEFENDANT RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO MOVE FOR THE SUPPRESSION OF THE DEFENDANT'S STATEMENT UTILIZED DURING TRIAL.

### Ground Five

DEFENDANT RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO FILE A MOTION FOR THE DISCLOSURE OF THE CONFIDENTIAL INFORMANTS AND FAILED TO DEPOSE THESE CONFIDENTIAL INFORMANTS.

### Ground Six

DEFENDANT RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO DEPOSE AND INVESTIGATE A STATE'S WITNESS (DETECTIVE QUINN).

### Ground Seven

DEFENDANT RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO CHALLENGE THE CONFIDENTIAL INFORMANT'S RELIABILITY AS A BASIS FOR PROBABLE CAUSE.

### Ground Eight

DEFENDANT RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO CONDUCT A PROPER PRETRIAL INVESTIGATION AND SUBPOENA DEFENDANT'S CELLULAR PHONE RECORDS.

### Ground Nine

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO CONVEY A FAVORABLE PLEA OFFER.

On January 31, 2007, the trial court summarily denied grounds 6 and 8 and ordered

the State to respond to the remaining seven grounds. (Exhibit 011, R. 80-90). The State filed its response on June 8, 2007 and argued an evidentiary hearing would not be required for any of the grounds. (Exhibit 011, R. 199-211). The trial court entered its Order on June 14, 2007 and denied relief on grounds 1, 2, 3, 4, 5, and 7. The trial court ordered an evidentiary hearing on the remaining ground which alleged trial counsel failed to convey a favorable plea offer by the State. (Exhibit 011, R. 117-198).

The trial court held an evidentiary hearing on November 9, 2007 at which Whitehead's trial counsel testified. (Exhibit 011, R. 359-397). The trial court denied the motion on November 27, 2007. (Exhibit 011, R. 247-49).

## Direct Appeal of 3.850 Post-conviction Motion

Whitehead filed a notice of appeal in the Second District Court of Appeal on December 3, 2007, which was assigned case no.2D07-5600. (Exhibit 011). Whitehead raised two issues in his Initial Brief. (Exhibit 012).

### Issue I

THE TRIAL COURT ERRED IN DENYING GROUND FIVE OF THE MOTION FOR POST-CONVICTION RELIEF ALLEGING INEFFECTIVE ASSISTANCE FOR FAILING TO FILE A PRETRIAL MOTION TO COMPEL DISCLOSURE OF THE CONFIDENTIAL INFORMANT'S NAME.

### Issue II

THE TRIAL COURT ERRED IN DENYING GROUND NINE OF THE MOTION FOR POST-CONVICTION RELIEF ALLEGING INEFFECTIVE ASSISTANCE FOR FAILING TO CONVEY A FAVORABLE PLEA OFFER.

The State filed its Answer Brief on January 22, 2008. (Exhibit 013). The Second District Court of Appeal denied the appeal without opinion on November 6, 2009. *Whitehead v. State*, 22 So.3d 85 (Fla. 2nd DCA 2009). (Exhibit 014) The Mandate issued

December 1, 2009.

## The Instant Petition

On December 28, 2009, Whitehead filed the instant federal petition raising nine grounds for relief.

### STANDARDS OF REVIEW

#### The AEDPA Standard

Whitehead's petition is governed by the provisions of  28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Under AEDPA, this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

#### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

<u>Procedural Default Standard</u>

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell,* 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845).  This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad

8

significance.   *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."  *Smith v. Jones*, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures."  *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances.   First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "'prejudice,"  Stewart must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982). Stewart must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell,* 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted

claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); , 353 F.3d at 892.   This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson,* 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324.   This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable

cause)(footnote omitted).

"The Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896.  In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53

## DISCUSSION

### The Following  Grounds Are Procedurally Barred

**Ground 1** Counsel was ineffective for failing to effectively raise the issue of objective and subjective entrapment.

**Ground 2**  Whitehead's counsel was ineffective for failing to raise prosecutorial misconduct as an issue.[1]

**Ground 4**  Whitehead was denied effective representation during trial when counsel failed to impeach a state's witness on the issue of entrapment.

**Ground 5** Whitehead was denied effective representation during trial when counsel failed to move to suppress Whitehead's statement to the police which was used during trial.

---

[1]  Whitehead does not allege ineffective assistance of appellate counsel in his amended 28 U.S.C. § 2254 petition for writ of habeas corpus.  He only alleges ineffective assistance of trial counsel.  Since Whitehead states that he raised this issue in a Rule 3.850 motion, this Court construes this claim to be a claim of ineffective assistance of trial counsel only.   Furthermore, a review of Whitehead's reply to the response demonstrates that his claims as to grounds one, two, four, five, six, and seven are related to trial counsel's ineffectiveness.

**Ground 6** Whitehead was denied effective representation during trial when counsel failed to challenge the confidential informant's reliability as a basis for probable cause.

**Ground 7** Whitehead was denied effective representation during trial when counsel failed to depose a state's witness.

### Grounds 1, 2, 4, 5, 6 and 7 Allege Ineffective Assistance of Trial Counsel

The Court notes that in his amended 28 U.S.C. § 2254 petition filed in this Court, Whitehead alleges that he raised these grounds in his Rule 3.850 motion.  Nowhere in his petition does he state that he raised grounds one, two, four, five, six, or seven in his state petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. Therefore, the Court can only construe these claims as Rule 3.850 ineffective assistance of trial counsel claims.

Grounds one, two, four, five, six and seven are procedurally barred because Whitehead failed to raise the grounds above in his direct appeal of the trial court's denial of post-conviction relief. Whitehead's waiver or abandonment of the these grounds, prior to taking his direct appeal of the trial court's summary denial, works as a procedural default for federal habeas corpus purposes.  Whitehead has not shown cause and prejudice to overcome the procedural default and has failed to demonstrate that a fundamental miscarriage of justice will result if this Court does not reach the merits of these grounds.

To exhaust state remedies where a petitioner's post conviction motion has been denied, the petitioner must appeal the denial of the motion. *See, e.g., Leonard v. Wainwright*, 601 F.2d 807 (5th Cir. 1979). Since Whitehead did not properly raise these issues on appeal, the claims are not exhausted for federal habeas corpus purposes and they are now procedurally barred. When it is clear that the unexhausted claims would be barred in state court due to a state-law procedural default, federal courts can treat those

claims now barred by state law as no basis for federal habeas relief. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)).

In Florida, as in other jurisdictions, the appellate rules and decisional law require that issues not presented and argued in an initial brief are deemed abandoned or waived, and will not be considered by the reviewing court. *See, e.g., Duest v. Dugger*, 555 So. 2d 849, 851-52 (Fla. 1990)(merely making reference to arguments in the lower court without further elucidation does not suffice to preserve issues, and those claims are deemed to have been waived); *Bondu v. Gurvich*, 473 So. 2d 1307, 1313 n. 1 (Fla. 3d DCA 1984)(despite fact that notice of appeal stated that petitioner was appealing certain additional actions of the trial court, the failure to challenge these actions in the initial brief results in abandonment of those challenges).

Further and alternatively, Whitehead fails to make a threshold showing of entitlement to relief under 28 U.S.C. § 2254 (d). The amended petition does not allege and show that the state court decision relative to any of these grounds resulted in an unreasonable application of clearly established federal law or an unreasonable determination of the facts in Whitehead's case.

Grounds one, two, four, five, six, and seven do not warrant habeas corpus relief.

Ground Three

Whitehead claims counsel was ineffective for failing to raise a chain of custody argument as to the improper introduction of cocaine into evidence.  Whitehead states that he raised this ground as an ineffective assistance of appellate counsel claim pursuant to Florida Rules of Appellate Procedure, Rule 9.141(c).  This claim has no merit.

The State's evidence at trial showed Whitehead was charged by amended information with trafficking in cocaine (400 grams or more but less than 150 kilograms), a first-degree felony, for an incident that occurred October 4, 2001. (Exhibit 008, Exh. 1 at 5-6). Whitehead was tried on July 1, 2004. At the conclusion of the one-day trial, Whitehead's jury found him guilty of trafficking in cocaine over 400 grams, as charged, and the trial court sentenced Whitehead to the mandatory minimum sentence of 15 years incarceration. (Exhibit 008, Exh. 1 at 79). With respect to Whitehead's trial, the State specifically relied upon its statement of the case and facts as set forth in the initial brief (Exhibit 008, Exh. 3) as clarified by the answer brief on direct appeal (Exhibit 008, Exh. 4), with the following additions:

Whitehead did not move to dismiss the charge based upon entrapment. (Exhibit 008, Exh. 1). Officer Mann testified at Whitehead's trial that at the conclusion of the October 4, 2001, drug transaction, he seized the cocaine immediately upon Whitehead's arrest. Officer Mann took the cocaine to the police department and placed it into a secure locker. Officer Mann identified the two kilos of cocaine he seized and placed into property because he recognized his handwriting on the label, which included his identification number, the case number, and the property tag number. Officer Mann testified that the drugs did not appear to have been tampered with in any way. (Exhibit 008, Exh. 2 at 14-18).

Detective Sweeting testified that on the date of the offense, he was posing as a cocaine dealer. (Exhibit 008, Exh. 2 at 22). After Detective Sweeting, two informants, Whitehead, and Whitehead's co-defendant had gathered at the location, Whitehead told Detective Sweeting he could resell the "fronted" cocaine and get the money back to Sweeting within 24 hours. (Exhibit 008, Exh. 2 at 27-28).

Detective Sweeting gave one kilogram of the cocaine to Whitehead, who cut into the package with a knife and "snorted" it to check its quality. Whitehead said he liked it. (Exhibit 008, Exh. 2 at 29).

Detective Sweeting identified the cocaine, and stated that it appeared to be in the same condition as on the date of the offense except that there was a piece of tape placed over the spot where Whitehead had cut into it. (Exhibit 008, Exh. 2 at 29-30). The trial court admitted a videotape of the undercover transaction over Whitehead's objection that the State had failed to "establish the reliability of the equipment" used to produce the tape. (Exhibit 008, Exh. 2 at 33).

Detective Sweeting testified that prior to the transaction, he had no personal knowledge of Whitehead.  The informants that were used had been drug dealers in the past and were paid money for their assistance. (Exhibit 008, Exh. 2 at 37-38). Detective Sweeting testified that he was present when an informant received calls from South America instructing Whitehead to call the informant, but was not present during any conversation an informant had with Whitehead.  (Exhibit 008, Exh. 2 at 40-41).

Agent Quinn conducted a post-*Miranda* interview of Whitehead in which Whitehead stated that the deal had been set up by his stepfather in Columbia. Agent Quinn was "familiar" with Whitehead's stepfather, and so his interest was "peaked" when Whitehead mentioned his stepfather. Whitehead stated that his stepfather gave him a number to contact regarding a cocaine transaction. Whitehead's role was to purchase some cocaine and either deliver it himself or have people from North Carolina come and pick it up. Whitehead never said he was called repeatedly or "hounded" to set up the deal. The number his stepfather gave him belonged to a law enforcement informant. (Exhibit 008,

Exh. 2 at 50-53).

Ludwigsen, a forensic chemist with the Sarasota Sheriff's Office Crime Laboratory, testified that the cocaine was brought to her laboratory by technician Lanham from the law enforcement agency, where Ludwigsen signed for it. After Ludwigsen received it, she stored it in a locked closet until the agency returned for it. Ludwigsen recognized the cocaine by the Sarasota Sheriff's Office Crime Laboratory tape, the exhibit numbers, the date, and her initials on it. The evidence was completely sealed when she received it. When Ludwigsen completed her testing of a small portion of the substance, she re-taped it, placed it back into the bag, taped the bag, and placed it back into the locked closet. The evidence was admitted over Whitehead's "chain of custody" objection. (Exhibit 008, Exh. 2 at 57-61, 64).

At the close of the State's case, Whitehead moved for judgment of acquittal, arguing that the State failed to establish "that there was sufficient chain of custody to allow [the cocaine] into evidence." Whitehead argued that there was "no testimony how it got in the hands of Technician Lanham . . . " Whitehead also argued that the State failed to establish the element of knowledge to prove trafficking in cocaine. The trial court denied the motion. (Exhibit 008, Exh. 2 at 70-71).

Whitehead testified on his own behalf. He stated that his stepfather, whom he referred to as his father, lived in either Venezuela or Columbia and was very poor. In September or October, 2001, Whitehead got a call from a "guy" who said he got Whitehead's number from Whitehead's stepfather. Whitehead did not know the man. He told the man he was busy and to call him back later. The man did call back on several different occasions, and Whitehead told the man he was busy. "And then my father called

me and told me to go and meet the guy." Whitehead did not know at the time why he was going to meet with the man, and the man never told Whitehead over the phone why he was calling.

When Whitehead met with the man, Whitehead asked the man why he had been calling. Whitehead testified, "He said I heard you were a good guy and I want to do you a favor and your dad a favor. He said that he could help me make some money, and he just kept going on about how it wouldn't be a problem and how he set everything up for me and helped me make some money." The man set up a deal with his boss for his boss to give Whitehead some drugs for which he had buyers. Whitehead testified that he received five or six calls from the man before they met and the subject of drugs came up. That man was present at the transaction at which Whitehead was arrested.

After the meeting with the man about drugs, Whitehead's stepfather called Whitehead and said Whitehead should do the deal because it would help him. Whitehead testified that he did not agree to do the deal until his stepfather called him and told him to do it.

Whitehead denied that he ever mentioned his stepfather to Agent Quinn. Whitehead stated that he agreed to do the deal in order to make money and to help his stepfather. Whitehead acknowledged that the drug deal in which he participated was the one portrayed in the videotape shown during the State's case. (Exhibit 008, Exh. 2 at 74-84).

Detective Sweeting testified in rebuttal that the informant's first contact with Whitehead was October 1, and the arrest was October 4. (Exhibit 008, Exh. 2 at 88). The informants did not have a contact number to contact Whitehead. "The stepfather used his son, stepson, as a broker to contact my informant to purchase cocaine using him as a

broker, not a buyer, to then take that cocaine and transport it and sell it to the people in North Carolina." (Exhibit 008, Exh. 2 at 85-90).

At the close of all the evidence, Whitehead renewed his motion for judgment of acquittal "on the grounds previously stated." The motion was again denied. (Exhibit 008, Exh. 2 at 92).

After the jury was instructed and retired to deliberate, Whitehead made a motion for mistrial "based on the State's comments in closing concerning Whitehead's failure to produce cell phone records." The trial court denied the motion, and noted that the jury had been instructed on the burden of proof. (Exhibit 008, Exh. 2 at 138-39).

The evidence demonstrates that appellate counsel was not ineffective for failing to raise a chain of custody argument as to the improper introduction of cocaine into evidence, as the evidence was properly introduced.

Ground three does not warrant habeas corpus relief.

Ground Eight

Whitehead claims he was denied effective representation during trial when counsel failed to seek disclosure of the confidential informant's identity and failed to depose the confidential informant.

Whitehead fails to make a threshold showing of entitlement to relief under § 2254 (d) as amended. The petition does not allege and show that the state decision resulted in an unreasonable application of clearly established federal law or an unreasonable determination of the facts in Whitehead's case.

Whitehead has failed to make any showing, either before this Court or the trial court, for his assertion that the confidential informants would have given any beneficial testimony

concerning his defense of entrapment. The trial court would have properly denied any motion for disclosure of the two confidential informants, had one been made before the trial court.

Appellate courts review the denial of a motion to disclose the identity of a confidential informant for an abuse of discretion. *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991). The Supreme Court has recognized that although the government generally has the privilege to withhold the identity of its confidential sources, "[w]here the disclosure of an informer's identity, or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60 (1957). This requires balancing "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. Appellate courts should focus the inquiry by relying principally upon three considerations: (1) the extent of the informant's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant; and (3) the government's interest in nondisclosure. *United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985).

"Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure. The defendant must show that the informant's testimony would significantly aid in establishing an asserted defense." *Id.* (internal citations omitted).

In the instant case, Whitehead made a post-*Miranda* statement following his arrest in which he stated that his stepfather in Colombia gave him a number to call regarding a

cocaine transaction. Whitehead's role was to purchase some cocaine and either deliver it himself or have people from North Carolina come and pick it up. As it happens, the number Whitehead's stepfather gave him belonged to a police informant. Whitehead's post-arrest statement was verified by Detective Sweeting's rebuttal testimony that the police informants did not have a contact number for Whitehead and that it was Whitehead's stepfather who put Whitehead in touch with the informants.

"Entrapment is not an available defense when a middleman, not a state agent, induces a defendant to engage in a crime." *Prince v. State*, 638 So. 2d 1022 (Fla. 5th DCA 1994)(citing *State v. Hunter,* 586 So. 2d 319, 322 (Fla. 1991). *See also, Whorley v. State*, 848 So. 2d 491 (Fla. 5th DCA 2003)("The general rule is that entrapment will not lie where the inducement to commit a crime comes from a non-agent private citizen.").

As Whitehead failed to establish the importance of the informant's testimony, it was unnecessary for the trial court to consider the government's interest in nondisclosure. See *United States v. Diaz*, 655 F.2d 580, 588-89 (5th Cir. 1981) (declining to consider the third factor when appellant did not carry her burden).

Ground eight does not warrant habeas corpus relief.

Ground Nine

Whitehead claims he was denied effective representation during trial when counsel failed to convey a favorable plea offer. Whitehead conceded to the trial court during his evidentiary hearing that his trial counsel timely conveyed the plea offer to Whitehead. The trial court properly denied Whitehead's motion for relief claiming his trial counsel was ineffective for failing to convey a plea offer by the State. The trial court properly addressed this issue at the evidentiary hearing. Whitehead testified at the evidentiary hearing and

completely contradicted his allegation of error on this issue. (Exhibit 011, Evidentiary Hearing, T. 6-17). Whitehead had claimed his attorney never conveyed the plea offer, but testified his trial counsel came to the jail on the Friday afternoon prior to his trial and told him the State was willing to offer a plea bargain "the range was anywhere between five and eight years." (Exhibit 011, Evidentiary Hearing, T. 12). Whitehead testified he did not tell his trial counsel he would accept the offer on Friday, but rather agreed he had told trial counsel he wanted to speak to his family about the offer. (Exhibit 011, Evidentiary Hearing, T. 11). Whitehead also agreed that the fact that the offer was made by the State after the trial court's cutoff date for entering a negotiated plea was not his trial counsel's fault. (Exhibit 011, Evidentiary Hearing, T. 13-14).

In light of Whitehead's concession that his trial counsel did communicate the plea offer in a timely manner after the State communicated with trial counsel, the trial court properly denied relief on this ground. Whitehead can show no prejudice from trial counsel's performance where he communicated the plea offer in a timely manner.

Ground nine does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Whitehead's petition for writ of habeas corpus is denied.  The Clerk is directed to enter judgment against Whitehead and to close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as

required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on December 30, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Jamal Whitehead